**McBRO PLANNING AND DEVELOPMENT COMPANY and McCarthy Brothers Company, a joint venture, Plaintiffs-Appellees,**

v.

**TRIANGLE ELECTRICAL CONSTRUCTION COMPANY, INC., Defendant-Appellant.**

No. 83–7034.

United States Court of Appeals, Eleventh Circuit.

Sept. 6, 1984.

James H. Starnes, Starnes & Atchison, Birmingham, Ala., for defendant-appellant.

Braxton Schell, Jr., Bradley, Arant, Rose & White, Birmingham, Ala., for plaintiffs-appellees.

Before GODBOLD, Chief Judge, RONEY and SMITH *, Circuit Judges.

EDWARD S. SMITH, Circuit Judge:

Defendant-appellant, Triangle Electrical Construction Company, Inc. (Triangle), appeals here from the United States District Court for the Northern District of Alabama, which granted the petition of plaintiffs-appellees (McBro) for an order compelling arbitration and staying further proceedings in the state court. We affirm.

*Background*

This suit concerns the arbitrability of Triangle's claims, cast in tort, against McBro, with whom Triangle had no written arbitration agreement. Both Triangle and McBro did have written arbitration agreements with St. Margaret's Hospital, with which both parties had entered written contracts regarding additions to and renovations of the hospital. Triangle contracted with St. Margaret's to perform electrical

* Honorable Edward S. Smith, U.S. Circuit Judge    for the Federal Circuit, sitting by designation.

work, and McBro contracted to act as construction manager.

During the course of the project Triangle alleged that McBro harassed and hampered its work. Accordingly, Triangle sought redress in state court, where it styled claims against McBro under a third-party beneficiary (contract) count and intentional interference with contract and negligence (tort) counts. Triangle subsequently dropped the third-party beneficiary count. McBro moved in the state court for a stay pending arbitration and in the district court for an order compelling arbitration; both motions were granted. The district court held that Triangle must arbitrate because it was bound by the arbitration clauses in the McBro-St. Margaret's contract and, alternatively, by the identical clause in the Triangle-St. Margaret's contract.[1] We analyze these contracts and the law further.

## Opinion

We note first that our standard of review of the district court's opinion is whether it is correct as a matter of law.

The pertinent text of the arbitration clause in both the McBro-St. Margaret's and Triangle-St. Margaret's contracts is broad: any controversy "arising out of or relating to this [Contract] or the breach thereof" shall be settled by arbitration. The Triangle-St. Margaret's contract lists McBro as construction manager, but the contract itself constitutes an agreement between St. Margaret's as hospital owner and Triangle as contractor. That contract also states, in its general conditions section at

article 1.2.6, that "[n]othing contained in the Contract Documents shall create any contractual relationship between * * * the Construction Manager [McBro] and the Contractor [Triangle]." The arbitration clause, article 7.10, of the same contract refers to the "parties" or the "other party." Similarly, the McBro-St. Margaret's contract is an agreement between those two parties; it makes no mention of Triangle as contractor.

Triangle contends vigorously that the *sine qua non* of the Federal Arbitration Act is a written agreement.[2] Since there was no written agreement between Triangle and McBro to arbitrate, Triangle contends, the court below erred in compelling them to do so. On the other hand, McBro stresses the breadth of the arbitration clause, cited above, in the two contracts with St. Margaret's and the fact that in state court Triangle originally pled a third-party beneficiary theory, strongly implying if not conceding privity of contract with McBro.[3]

■ Triangle's concern about being forced to arbitrate absent a written agreement, and its concomitant concern about loss of a jury trial in state court, are well taken. However, the close relationship of the three entities here involved—St. Margaret's, Triangle, and McBro—and the close relationship of the alleged wrongs to McBro's contractual duties to perform as construction manager,[4] give one pause. This is not a simple tort case where, for example, Mr. McBro might have committed

1. *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.,* No. 82–C–1577–S, Memorandum of Opinion (N.D.Ala., Oct. 14, 1982); motion to reconsider overruled, Memorandum of Opinion (N.D.Ala. Dec. 9, 1982).

2. 9 U.S.C. § 2 (1982). *See also Janmort Leasing, Inc. v. Econo-Car Int'l, Inc.,* 475 F.Supp. 1282, 1288 (E.D.N.Y.1979).

3. Triangle points out that it deleted count III, its third-party beneficiary contract claim, shortly after filing in state court because it realized that the Alabama case of *Federal Mogul Corp. v. Universal Constr. Corp.,* 376 So.2d 716 (Ala.Civ.

App.1979), prevented such a claim, where the Triangle-St. Margaret's contract expressly prohibited a Triangle-McBro contractual relationship in article 1.2.6, cited *supra.* McBro disputes the applicability of *Federal Mogul* and notes that Triangle failed to delete its incorporation by reference to the count III allegations, set forth in its tort counts IV and V.

4. Count IV of Triangle's complaint in state court concerns McBro's interference with Triangle's rights under its contract with St. Margaret's. Count V concerns McBro's alleged negligence "[d]uring the course of construction."

a battery against Mr. Triangle and there could be no question of the inappropriateness of arbitration arising from a clause in unrelated construction contracts. Moreover, it is well established that a party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract.[5]

As regards the lack of a written agreement between Triangle and McBro, at least one other circuit court, in nearly identical circumstances, has held this not to be an impediment to arbitration.[6] That court theorized that the contractor was equitably estopped from asserting this argument, because the very basis of the contractor's claim against the construction manager was that the manager breached the duties and responsibilities assigned it by the owner-contractor agreement.[7] This theory applies precisely here. Although, as we have noted above, the Triangle-St. Margaret's contract disclaims any contractual relationship between McBro and Triangle, the general conditions of that contract are replete with references to McBro's duties as construction manager, on behalf of St. Margaret's, as regards supervision of the project, for which Triangle was a contractor.[8] As the Seventh Circuit stated in this situation, the contractor's claims are "intimately founded in and intertwined with the underlying contract obligations."[9]

We AFFIRM the district court's judgment granting arbitration.

5. See, e.g., Acevedo Maldonado v. PPG Indus., Inc., 514 F.2d 614 (1st Cir.1975).

6. Hughes Masonry Co. v. Greater Clark County School Bldg. Corp., 659 F.2d 836 (7th Cir.1981).

7. Id. at 838.

8. See, e.g., the following articles of the general conditions of the contract for construction: 2.2 re definition of construction manager as "engaged to manage the construction of the Project"; 2.3 re contract administration, giving construction manager "authority to act on behalf of the Owner," requiring contractor to provide construction manager with safe access to work in progress, authorizing construction manager to schedule and coordinate work of con-

tractors, to process payment applications and to reject nonconforming work, and even giving contractor reasonable veto over owner's choice of new construction manager and referring any dispute thereon to arbitration. In short, the construction manager's duties on behalf of the owner are so broad that a contractor-owner contract inevitably involves a close contractor-construction manager relationship.

9. Hughes Masonry Co., 659 F.2d at 841 n. 9. We note as well the federal policy favoring arbitration. Seaboard Coast Line Ry. v. National Rail Passenger Corp., 554 F.2d 657, 660 (5th Cir. 1977).