SHORES, Justice.
Kenneth Pointer petitions for a writ of mandamus directing the trial court to vacate it's order' compelling arbitration of his claims against Regal Nissan Company and Nissan Motor Acceptance Corporation. We grant the petition.
“A petition for a writ of mandamus is the appropriate means by which to challenge a trial court’s order compelling arbitration. Ex parte Alexander, 558 So.2d 364 (Ala.1990). Mandamus is an extraordinary remedy requiring a showing that there is: ‘(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ Ex parte Edgar, 543 So.2d 682, 684 (Ala.1989).”
Ex parte Jones, 686 So.2d 1166, 1166 (Ala.1996).
Pointer sued Regal Nissan Company and Nissan Motor Acceptance Corporation, alleging misrepresentation, fraud, breach of contract, deceit, and conversion; his claims arose out of his purchase of a 1995 Nissan 200 SX automobile from the Regal Nissan dealership on April 10, 1995. Pointer entered into an agreement with Regal Nissan to trade in his 1992 Chevrolet Silverado truck on the purchase of the 1995 Nissan 200 SX. The contract provisions show that Regal Nissan agreed to pay Pointer $7,000 for his equity in the Silverado tru.ck. Pointer financed the purchase of the Nissan 200 SX through Nissan Motor Acceptance Corporation.
Several days after Pointer had contracted for the purchase of the Nissan 200 SX, he was contacted by the Regal Nissan salesman he had dealt with; the salesman told him that the Silverado truck was not worth the trade-in amount that Regal Nissan had agreed to pay. .The salesman gave Pointer *972 two options: Pointer could either rescind the deal and return the Nissan 200 SX to Regal Nissan, or sign a new agreement whereby he would be given less money for the Silverado truck. After having a conversation with the salesman and the manager, and after receiving a subsequent letter from Regal Nissan, Pointer refused to return the Nissan 200 SX to Regal Nissan or to sign a new agreement. Regal Nissan sent Pointer a check for $4,000 rather than the $7,000 agreed upon in the contract.
The provisions of the contract show that upon entering into the sales agreement, Regal Nissan was aware that the truck had received both major body work and major paint work. The trade-in disclosure form also indicates that Pointer disclosed to Regal Nissan that the truck had been repainted and that the hood and fender had been replaced. Only after inspecting the truck and getting a disclosure of damage from Pointer, did Regal Nissan enter into the contract with Pointer. The printed contract form includes numerous sections set off in boxes. Each of the sections contains a location for the purchaser’s signature or initials. The only section left not signed or initialed is one entitled “Arbitration Clause.”
Relying on Crown Pontiac, Inc. v. McCarrell, 695 So.2d 615 (Ala.1997), Pointer argues that the unsigned arbitration clause is not a binding term of the contract. In Crown Pontiac, the purchaser of an automobile signed two separate “retail buyer’s order” forms. This Court held that the second form superseded the terms in the first form because the purchaser, McCarrell, had signed a merger clause in the second form. Id. at 618. The second retail buyer’s order form contained an arbitration clause, which McCarrell did not sign. Crown Pontiac argued that the arbitration clause was enforceable simply because it had been included in the retail buyer’s order. Regal Nissan makes the same argument in this case.
The Crown Pontiac Court, in addressing the question of the enforceability of the unsigned arbitration clause, stated:
“The purpose of a signature is to show ‘mutuality and assent,’ which are required for a contract to be binding. Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297, 304 (Ala.1986). Conversely, in this case the absence of a signature under the arbitration clause shows a lack of mutuality and assent, where the contract contains a signature line specifically for the arbitration clause, but where McCarrell did not sign on that line, although he signed on other lines that similarly indicated agreement to specific terms.”
Id. at 618-19. (Emphasis original.) The Crown Pontiac Court held that the unsigned arbitration clause did not become a part of the overall agreement of the parties. Id. at 619.
Regal Nissan and Nissan Motor Acceptance Corporation argue that the signature line in the section entitled “Arbitration Clause” does not apply to the arbitration terms. We do not agree. The different terms of the contract are divided into boxes, with each box containing a boldface heading. If the signature line that is included in the box entitled “Arbitration Clause” was for some other term or clause of the contract, it would have been set off with a boldface heading, as was every other term or clause. For these reasons, the unsigned arbitration clause did not become a part of the agreement between the parties. Crown Pontiac, supra.
Pointer also argues that the contract was induced by fraud and that the contract is therefore voidable and the arbitration clause unenforceable. It is unnecessary to address this argument, because we have determined that the arbitration clause is not enforceable as part of the agreement.
Accordingly, the trial court erred in compelling arbitration of Pointer’s claims against Regal Nissan and Nissan Motor Acceptance Corporation. There was no mutual agreement to submit to arbitration the claims Pointer has made against Regal Nissan and Nissan Motor Acceptance Corporation. Pointer has shown a clear legal right to an order directing the trial court to set aside its order compelling arbitration.
WRIT GRANTED.
*973 MADDOX, ALMON, HOUSTON, KENNEDY, COOK, and BUTTS, JJ., concur.
HOOPER, C.J., and SEE, J., dissent.